

# HELEN F. DALTON & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415
Tel. (718) 263-9591 Fax. (718) 263-9598

September 21, 2021

**Via ECF**
The Honorable Judge Taryn A. Merkl
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: **Perez, et al. v. Pecoshitas Rest. & Bakery LLC, et al.**
    **20-CV-2992 (TAM)**

Dear Judge Merkl:

Our office represents Liliana Perez ("Plaintiff" or "Perez") and we submit this motion jointly with counsel for Pecoshitas Rest. & Bakery LLC and Oscar Franco (collectively, "the Defendants"), requesting the Court's approval of the parties' Settlement Agreement. The terms of the parties' Settlement Agreement, attached hereto as **Exhibit 1**, were reached following a months-long negotiation process between the parties.

The parties submit this motion in support of their position that the Settlement Agreement is fair and reasonable and does not raise any of the concerns cited in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). The parties address the monetary and non-monetary terms as well as Plaintiffs' counsel's requested attorneys' fees and respectfully request that the Court So Order or approve the Settlement Agreement.

   I.   **The Monetary Terms of the Settlement Agreement are Fair and Reasonable**

   a. **The Settlement Amount**

The parties agreed to resolve this matter for the amount of $30,000.00 payable to the Plaintiff, inclusive of attorneys' fees. The settlement will be paid in three monthly installments of $10,000.00.

   b. **Plaintiff's Position**

Plaintiff brought this action against Defendants alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Laws ("NYLL"). In general, Plaintiff alleged that: i) her hourly rate of pay at all times fell below the applicable New York State minimum wage rate,

ii) she was not compensated at time-and-a-half the applicable New York State minimum wage rate for her hours worked in excess of forty (40) hours each workweek (and instead received the same below-minimum wage hourly rate for all hours worked), and iii) she was not provided a NYLL 195 compliant wage notice upon hire and was not provided NYLL 195 compliant wage statements with her weekly pay.

Plaintiff alleged that she was employed by the Defendants from in or around January 2015 until in or around November 2018 as a counterperson and waitress at Defendants' restaurant. Plaintiff alleged that she regularly worked fifty-four (54) hours per week during her employment. Additionally, Plaintiff alleged that she was paid regular hourly rates ranging from $6.00 per hour to $8.65 per hour. As such, Plaintiff claimed that her hourly rate of pay fell below the applicable minimum wage rate in New York and that she did not receive time-and-a-half her hourly rate of pay (or the applicable minimum wage) when she worked in excess of forty (40) hours per workweek. Plaintiff alleged that she received her pay entirely in cash.

During the course of the parties' settlement negotiations, Defendants provided our office with copies of paystubs from Plaintiff's employment. Our office carefully reviewed those paystubs with our client, who alleged that she had never received or reviewed these paystubs. Plaintiff further disputed the number of hours listed on the paystubs and the amount of tips received. Based on our conversations with the client and analysis of the records provided, we calculated that Plaintiff was owed approximately $32,000.00 in unpaid wages, assuming that Plaintiff could establish that she worked 54 hours every week of her employment.

While Plaintiff was confident that she could succeed on all of her claims at trial, Plaintiff recognized the risks of continuing litigation and the records and defenses maintained by Defendants. Although Plaintiff disputed the accuracy and completeness of the records provided, Plaintiff acknowledged their potential probative value should this matter have proceeded to trial. As such, Plaintiff's preference was to receive guaranteed payment in a sum certain pursuant to a short payment plan following Court approval of the Settlement Agreement rather than engage in protracted litigation and face the uncertainty of trial at a much later date in the future. Moreover, the agreed-upon settlement amount is almost 100% of Plaintiff's alleged unpaid wages.

c. **Defendants' Position**

Defendants deny Plaintiff's allegations regarding the wage violations. While Plaintiff alleges that she worked fourteen (14) hours of overtime each week, Defendants' records demonstrate that, on average, Plaintiff worked approximately two and one-half hours of overtime per workweek, and the most Plaintiff ever worked in overtime was approximately seven (7) hours in a workweek. In addition, Defendants contend that Plaintiff was a food service worker and Defendants were entitled to take a tip credit of $4 against Plaintiff's minimum hourly wage rate of $12/hour in accordance with 12 N.Y.C.R.R. § 146-1.3 during the applicable time period, thus explaining the alleged sub-minimum wage hourly rate. Indeed, Defendants produced to Plaintiff's counsel paystubs itemizing the tips she received and a calculation demonstrating that the tips she received brought her overall hourly rate well over the required minimum hourly wage. In short, Defendants contend that Plaintiff was properly paid.

However, Plaintiff claimed that she never received the paystubs or a notice confirming that a tip credit was being taken against the minimum hourly wage rate of $12/hour. Plaintiff was also

unable to provide any documentation to confirm that she had worked fifty-four (54) hours per week as she alleged. As a result, Defendants assumed that if she never received notice of the tip credit, Defendants could owe Plaintiff approximately $21,000 in unpaid wages, assuming that Plaintiff worked only the hours listed on her time sheets.

Defendants are confident that it would succeed in this litigation, but understand the risk involved in continuing to litigate this claim. Further, although the agreed-upon settlement amount is far more than what the Defendants estimate could be owed, Defendants are amenable to making this payment as the cost to litigate this claim would be far more costly.

### d. The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id.* (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.* (citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

The parties have agreed to settle all claims asserted in this matter for $30,000.00. The parties believe that this amount is reasonable considering Plaintiff's claims and the defenses and records maintained by Defendants in this matter and the fact that the terms of the Settlement Agreement was achieved through a months-long negotiation process between counsel who specialize in this area of law. The parties had genuine, bona fide disputes over the number of hours worked by Plaintiff, the wages paid to Plaintiff and the dates of Plaintiff's employment, but both sides made compromises on their positions in order to achieve a fair and reasonable settlement. Additionally, the settlement amount allows Plaintiff to recover close to 100% of her alleged unpaid wages – a figure strongly contested by Defendants.

### II.     The Non-Monetary Terms of the Settlement Agreement are Fair and Reasonable

"In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (*quoting Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)). Moreover, "[i]n the context of an FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers, such broad releases are doubly problematic." *Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (*quoting Camacho v. Ess-A-Bagel, Inc.*, No. 14-cv-2592 (LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014)).

Here, the release in paragraph 4 of the Settlement Agreement ("Release") is tailored to Plaintiff's wage-and-hour-related claims against the Defendants. The Release does not raise any

concerns regarding unequal bargaining power between Plaintiffs and Defendants and the Release is not overbroad such that there is a concern that Plaintiffs are releasing any and all possible claims against Defendants, including claims unrelated to the wage claims asserted in this action.

Furthermore, the Settlement Agreement does not contain any confidentiality provision that would otherwise preclude Plaintiffs from openly discussing their experiences litigating this matter as rejected by *Cheeks*.

As the Release is carefully drafted to comply with Second Circuit case law in FLSA matters and there is no confidentiality clause contained in the Settlement Agreement, the parties' position is that the non-monetary terms of the Settlement Agreement are fair and reasonable and comport with the standards articulated in *Cheeks*.

### III.     Distribution to the Plaintiff and Requested Attorneys' Fees and Expenses

#### a.  Distribution to the Plaintiff

The parties agreed to a global settlement of $30,000.00 to resolve all claims asserted in this action. If the Agreement is approved by the Court, Plaintiff will recover an aggregate amount of $19,648.00, after requested attorneys' fees and reimbursement of expenses.

#### b.  Plaintiff's Counsel's Requested Attorneys' Fees and Expenses

Plaintiff's counsel respectfully requests $528.00 for identifiable expenses, which include:

- the Eastern District of New York filing fee in this matter: $400.00
- the costs of service of the Summons and Complaint on Defendants in this matter: $128.00

Plaintiff's counsel respectfully requests one-third of the settlement amount less the above expenses ($29,472.00), or $9,824.00 in attorneys' fees, as agreed upon in the Plaintiff's retainer agreement with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $10,352.00.

**Settlement Amount:** $30,000.00
**Attorneys' Expenses:** $528.00
**Settlement less Expenses:** $29,472.00 ($30,000.00 - $528.00)
**Requested Attorneys' Fees:** $9,824.00 ($29,472.00 / 3)
**Total payable to Attorneys:** $10,352.00 ($9,824.00 + $528.00)
**Total payable to Plaintiff:** $19,648.00 ($30,000.00 - $10,352.00)

Our office and the Plaintiff have a retainer agreement that is reduced to writing and is signed by the Plaintiff. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc*., 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

      This request for attorneys' fees is supported by the work performed by Plaintiff's counsel throughout the litigation of both matters and the recovery secured through their efforts. Plaintiff's counsel has zealously advocated for their clients throughout the litigation process and believe that the settlement amount secured is a product of their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiff.

      Lastly, as a check on Plaintiff's counsel's contingency fee request, our office attaches hereto as **Exhibit 2,** Plaintiff's counsel's contemporaneous billing records and attorney qualifications.

### IV.   Closing

      In closing, the parties believe that the settlement amount and the terms of the Settlement Agreement are fair and reasonable. The settlement was the product of good faith negotiations and the terms of the Settlement Agreement comport with Second Circuit case law. Both parties were represented by experienced and competent counsel who specialize in this area of law. As such, we respectfully request that the Court approve the Settlement Agreement in its entirety. We thank the Court for its consideration and remain available to provide any additional information.

      Respectfully submitted,

      *James O'Donnell*
      James O'Donnell, Esq.